[No. 41252.　En Banc.　September 10, 1970.]

THE STATE OF WASHINGTON, *Respondent,* v. SANDY JOE BRISCOE, *Appellant.*\*

\*Reported in 474 P.2d 267.

*Lowell K. Halverson* and *James E. McIver,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Edmund P. Allen,* for respondent.

McGOVERN, J.—Defendant Sandy Joe Briscoe appeals from the judgment and sentence entered against him upon a jury verdict finding him guilty on two counts of robbery.

The sufficiency of the evidence to support the findings of guilt is not challenged, but defendant asks for a new trial on the basis of error committed during the state's cross-examination of defendant's character witness. No other assignment of error is presented.

Mr. Curtis Bogan, the character witness, testified on direct examination that he had known the defendant for approximately 9 years, that he was aware of defendant's reputation in the community for truthfulness and veracity, that as far as ". . . adults are concerned he [the defendant] usually tells the truth," and that he saw and spoke with the defendant on the day of the robberies.

Thereafter, upon cross-examination, and over objection, the deputy prosecuting attorney asked the witness the following questions and received the succeeding answers:

Q. You say you are familiar with his reputation in the community. This is based upon your various contacts with him since you have known him, is that right? A. Yes.

. . .

Q. Mr. Bogan, do you know or have you heard that in June of 1960 the defendant, Sandy Joe Briscoe was sent to Juvenile Court for shoplifting following which a hearing was held and he was placed on probation? A. No. I did not know of this. Q. Did you know or have you heard that on April 17, 1962, the defendant Sandy Joe Briscoe was sent to Juvenile Court for the reason that he was charged or accused of committing assault on another youngster and as a result he was committed to the Department of Institutions? A. No, I do not know this. Q. Did you know or have you heard that in 1966 the de-

fendant Sandy Joe Briscoe was sent to Juvenile Court for larceny? A. No. I did not know this.

Defendant insists that the trial court committed error when it permitted the state to ask those questions. He first argues that his juvenile court record is not an appropriate subject matter of inquiry before a jury because our statutory law makes such records unavailable for that purpose.

■ We find that RCW 13.04.230 does not clothe one's juvenile past with the immunity from disclosure to which defendant claims he is entitled. Although our legislature has generally and wisely premised its juvenile legislation upon the doctrine that juvenile courts and juvenile laws are enacted for the care, education and protection of youthful offenders, nonetheless our legislature has pointedly avoided the enactment of legislation to the extent argued for by the defendant. To the contrary, the statute expressly provides that the only juvenile court record which shall be withheld from public inspection is "the probation officer's investigation record and report . . . ."

One's record of performance as a juvenile is as much subject to the scrutiny of legitimate cross-examination as is the record of any adult whose reputation for truth and veracity has become an issue in the cause. Here Mr. Bogan was a character witness for the defendant and the trait of character placed in issue by his testimony was the defendant's general reputation in the community for truthfulness and veracity.

■ We have held in a series of cases that when a character witness relates to the jury his opinion of the defendant's good reputation in the community for truth and veracity, then the state is entitled to test that witness on matters concerning his knowledge of the defendant's moral characteristics and to test his knowledge of defendant's prior acts of dishonesty. Only in this way is the jury able to properly evaluate the direct testimony of the character witness. Impeaching testimony may materially reduce its credibility. *State v. Austin,* 83 Wash. 444, 145 P. 451 (1915); *State v. McMullen,* 142 Wash. 7, 252 P. 108 (1927); *State v. Stilts,* 181 Wash. 305, 42 P.2d 779 (1935); *State v. Ander-*

*son,* 46 Wn.2d 864, 285 P.2d 879 (1955); *State v. Duree,* 52 Wn.2d 324, 324 P.2d 1074 (1958); *State v. Donaldson,* 76 Wn.2d 513, 458 P.2d 21 (1969).

The opportunity to cross-examine a character witness for the defense is essential for yet another reason. The credibility of the witness' testimony should be examined in the light of his understanding of what constitutes "good repute" and he should be questioned on matters pertaining to his good faith as well as his information and accuracy. Only legitimate and effective cross-examination can bring these matters to the surface for the jury's consideration.

The primary purpose of the cross-examination must, however, be to further the foregoing purposes and the trial judge must be watchful to terminate an attempt by the prosecution to engage in a general vilification of the defendant under the guise of legitimate cross-examination. If it develops that the questions asked on cross-examination are not made in good faith and are without foundation in fact, then upon proper motion a mistrial should be ordered. The purpose of the cross-examination must be to determine the credibility of the character witness and not to affect the character or reputation of the defendant.

Here the record is clear. The trial court was exceedingly alert to the problem created by the questions on cross-examination. Outside the presence of the jury the trial judge engaged in an extensive examination of the questions to be asked. He inquired into the foundation for those questions, into the good faith of the state in asking them, and then forewarned the state of a mistrial in the event of improper cross-examination. There was no abuse of discretion on the part of the trial court in its rulings.

We further find that the defendant's attorney opened up the subject of his client's prior relationship with the juvenile court. He did this when his character witness testified that he first knew the defendant at Luther Burbank School for Boys approximately 8 or 9 years earlier, about 1960, the year specified in the deputy prosecuting attorney's first inquiry. The witness also stated that the defendant

was at the school for boys because of ". . . a broken home type situation," a statement that the deputy prosecuting attorney was entitled to examine for credibility purposes.

■ Defendant then argues that the form of the questions put to the character witness on cross-examination was improper. The questions asked by the state were prefaced by "Did you know" or "Have you heard". In earlier cases we held that the proper form of cross-examination of a character witness permits a use of the preface "Do you know" or "Did you know" about a particular act of misconduct committed by the defendant. *State v. Austin,* 83 Wash. 444, 145 P. 451 (1915); *State v. Stilts,* 181 Wash. 305, 42 P.2d 779 (1935); *State v. Cyr,* 40 Wn.2d 840, 246 P.2d 480 (1952). With that view we aligned ourselves against the great weight of authority in this country. *See* Annot., 47 A.L.R.2d 1258 § 21(b) (1956). There is now, however, a strong feeling within the court that we should hereafter reject the preface "Do you know" as being a proper form of question to the witness who testifies to the defendant's reputation in the community for truth and veracity. Since the testimony of the witness relates to the defendant's reputation in the community, the pertinent inquiry then is not what the witness knows about the defendant but rather what he has heard about him in the community. Nonetheless, because the foreword "Have you heard" was alternatively included here, we find the assignment of error to be without sufficient merit.

Finally defendant argues that he is entitled to a new trial because the state breached its pretrial agreement with the defendant concerning the confidentiality of defendant's record as a juvenile. The trial court specifically considered this argument and found that the state agreed only to refrain from cross-examining the defendant himself about matters concerning his juvenile past; the pretrial agreement did not concern itself with the cross-examination of character witnesses. Here the record shows that the defendant testified. He was cross-examined by the state and no inquiry was

made of him concerning his juvenile past. There was no violation of the pretrial agreement.

The judgment and sentence are affirmed.

ALL CONCUR.