[No. 31872. Department Two. July 24, 1952.]

THE STATE OF WASHINGTON, *Respondent*, v. LOUIS CYR,
*Appellant.*[1]

[1]Reported in 246 P. (2d) 480.

*Futter, Burson & Freyd,* for appellant.

*Murray E. Taggart, Herbert H. Freise,* and *Vaughn Hubbard,* for respondent.

HAMLEY, J.—On the early morning of May 12, 1951, Louis Cyr was discovered inside a tavern in Burbank, Walla Walla county, Washington. This was several hours after the tavern had been closed for the night. After being identified, he was permitted to leave. Later in the morning, it was found that two gallons of wine and a cigar box containing small change were missing from the tavern. The sheriff's office made an investigation, after which Cyr was arrested while he was in a Wallula, Washington, restaurant. The officers then went outside and, without a search warrant, examined Cyr's automobile. They found a half-filled jug of wine of the same brand as that taken from the tavern. The missing cigar box and change was not found.

Cyr was thereupon brought to trial on a charge of burglary in the second degree. At the trial, he offered testimony to the effect that, while driving by the tavern, he had seen someone standing outside the building. He returned to investigate, heard footsteps, saw the back door open, and

entered the tavern. It was then that he was discovered by employees of the tavern owner. Defendant denied taking the wine or box of change, and testified that the wine which was discovered in his automobile had been purchased at Grandview or Sunnyside the week before.

The jury returned a verdict of guilty. Judgment was entered accordingly, and defendant appeals.

Appellant first assigns as error the admission in evidence, over his objection, of the half-filled wine jug which had been found in his automobile. Appellant asserts that this evidence was obtained as a result of an unreasonable search following a lawful arrest, in contravention of the fourteenth amendment of the Federal constitution and §§ 7 and 9, of Art. I, of the constitution of this state, and that this evidence should therefore have been suppressed.

In Federal prosecutions, the fourth amendment of the Federal constitution bars the use of evidence secured through an illegal search and seizure. *Weeks v. United States,* 232 U. S. 383, 58 L. Ed. 652, 34 S. Ct. 341. But neither the fourth nor fourteenth amendment of the Federal constitution requires state courts to follow the rule of the *Weeks* case. *Wolf v. Colorado,* 338 U. S. 25, 93 L. Ed. 1782, 69 S. Ct. 1359. The assignment of error in question, therefore, does not present a Federal constitutional question.

The counterpart in our state constitution of the fourth amendment of the Federal constitution is Art. I, § 7, reading as follows: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." *State v. Miles,* 29 Wn. (2d) 921, 926, 190 P. (2d) 740. With respect to the entering and search of private dwelling houses or places of residence, this constitutional provision is implemented by statute. RCW 10.79.040 (Rem. Rev. Stat., §§ 2240-1, 2240-2). It is the rule in this state that the prosecuting authority may not use, for its own profit, evidence that it has obtained in violation of these provisions. *State v. Gunkel,* 188 Wash. 528, 534, 63 P. (2d) 376; *Tacoma v. Houston,* 27 Wn. (2d) 215, 177 P. (2d) 886.

■ The constitutional requirement that searches and seizures be made only pursuant to "authority of law" is complied with where such search and seizure is made incident to a lawful arrest. Thus it is the general rule that, where a person is legally arrested, the arresting officer has a right to search such person and take from his possession money or goods which the officer reasonably believes to be connected with the supposed crime, and discoveries made in this lawful search may be shown in evidence at the trial. *Olympia v. Culp,* 136 Wash. 374, 240 Pac. 360; *State v. Rousseau, ante* p. 92, 241 P. (2d) 447; 74 A. L. R. 1387, 1388, annotation.

■ In the application of this rule, however, arresting officers are not confined to a search of the person. They may, for example, search his luggage or the automobile in which he is sitting. *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841. Likewise, where the accused is arrested in his home, or place of residence, a search of the home or place of residence may at that time be lawfully made for evidence of his guilt. *State v. Evans,* 145 Wash. 4, 13, 258 Pac. 845. Where the accused is on his way to his hotel room at the time of his arrest, his room may be searched while he is being held in custody at the police station. *State v. Evans, supra.* Where one is arrested after leaving his garage which is located in close proximity to his place of residence, the garage may be searched and seized articles used in evidence. *State v. Estes,* 151 Wash. 51, 274 Pac. 1053.

There are no decisions of this court dealing specifically with the right, incident to a lawful arrest, to search an automobile owned but not then occupied by the accused. However, there are a number of decisions from other jurisdictions bearing upon this point. In *Woods v. State,* 37 Okla. Cr. 377, 258 Pac. 816, where the defendant was arrested within a city for being drunk, a search thereafter made of his wagon, which he had left standing in the road a mile outside the city limits, was upheld, and evidence seized as a result of such search was held to be admissible. The same result was reached in *Gambill v. State,* 45 Okla. Cr. 281, 283

Pac. 262, where, after finding the defendant intoxicated under a bridge and arresting him, officers searched his automobile standing on a highway near the bridge.

In *State v. One Buick Automobile*, 120 Ore. 640, 253 Pac. 366, where the defendant was arrested in his apartment, a search of his automobile, which was parked in the apartment house garage, was upheld. In *People v. Garrett*, 232 Mich. 366, 205 N. W. 95, police officers, after arresting the defendants for intoxication and taking them to jail, found an automobile key among the effects of one. The officers took the key and went several blocks distant to the parking place of the car and made a search. The evidence seized during this search was held to be admissible.

In the instant case, appellant had driven to the neighboring town of Wallula several hours after he had been discovered in the tavern. He parked his automobile and went to a restaurant, where he was lawfully arrested a short time later. The exact distance between the parked car and the restaurant is not disclosed in the record. We can, however, take judicial notice of the fact that Wallula is not a large community. It is therefore apparent that the vehicle was parked reasonably close to the restaurant where the arrest was made. Having regard to the nature of the crime charged, the officer making the arrest had good reason to believe that evidence bearing upon the offense might be found in the automobile.

These facts would seem to bring this case within the rule sanctioned in the above-cited cases from this and other jurisdictions. They also satisfy the test laid down in *State v. Much*, 156 Wash. 403, 411, 287 Pac. 57, where we said:

"It is only unreasonable searches and seizures, without probable cause, that are forbidden."

We therefore conclude that the automobile in question was in such reasonably close proximity to the place of arrest, and there existed such probable cause to believe that a search of the vehicle would reveal evidence pertinent to the charge, that such search and seizure was incident to the arrest and therefore authorized by law. Accordingly, the

motion to suppress the evidence seized during the search was properly denied..

During the cross-examination of three character witnesses produced by appellant, they were each asked several questions in this form: "Did you *know* that in 1941 he [appellant] had his operator's license suspended?" "Did you *know* he was given twenty days for vagrancy in the city jail at Walla Walla?" "Did you *know* that he spent twelve days in jail and was fined twenty-five dollars for drunkenness in January, January 10, 1949?" The overruling of appellant's objections to these questions is assigned as error.

Appellant contends that the questions were improper in form; that they were designed to discredit appellant rather than to test the credibility of the character witnesses; and that the state made no attempt to substantiate the existence of any of the supposed misdeeds.

 Appellant is correct in stating that the weight of authority favors the rule that it is not proper to ask a character witness, on cross-examination, questions concerning his personal knowledge of acts of misconduct by the accused, as distinguished from questions as to whether the witness has heard of reports or rumors of such acts. 71 A. L. R. 1504, 1543, annotation. As indicated in the cited annotation, however, several jurisdictions permit character witnesses to be cross-examined as to their knowledge of particular acts of misconduct. This court follows the latter rule. *State v. Austin*, 83 Wash. 444, 145 Pac. 451. *State v. Stilts*, 181 Wash. 305, 312, 42 P. (2d) 779. The form of these questions was therefore proper.

 This court, however, adheres to the general rule that cross-examination, in situations of this kind, must be limited to an effort to discredit the testimony of the character witness. *State v. Presta*, 108 Wash. 256, 183 Pac. 112. Stated conversely, the rule is that such cross-examination may not be utilized for the primary purpose of discrediting the person on trial. *State v. Bozovich*, 145 Wash. 227, 259 Pac. 395.

A review of the pertinent testimony shows no such improper purpose in the case at bar. It shows, rather, that the questions were asked for the entirely proper purpose of undermining the credibility of the character witnesses, and that they probably had that effect. Appellant points to two instances in which, it is contended, the prosecuting attorney did not renew the question after the objection had been sustained, and asserts that this indicates a purpose to prejudice appellant by the mere asking of the questions. In one of these instances, the first question was later followed by one similar in nature. The failure to follow through to conclusion on each and every question is not surprising, in view of the confusion created by the constant interposition of objections.

There is some contention that the prosecuting attorney was guilty of misconduct in leafing through a sheaf of papers on his desk and appearing to read from them, while he was asking these questions. The record, however, does not disclose what the prosecuting attorney was doing with his hands while he was asking these questions, or that appellant then raised any objection to the prosecuting attorney's demeanor. In any event, we see no impropriety in the asserted manner in which the cross-examination was conducted.

There is no rule requiring the state, on its own motion, to produce evidence in proof of the supposed misdeeds concerning which character witnesses are cross-examined. If the defendant in any case desires to question the accuracy of the facts implicit in this kind of cross-examination, he can either testify to the contrary or can ask the trial court to inquire into the matter in the absence of the jury. Needless to say, if the trial court should be thus persuaded that such questions asked on cross-examination were without foundation in fact, the appropriate remedy would be to declare a mistrial.

The last two assignments of error relate to the admission, over appellant's objection, of two photographs. One of these is a photograph of the window through which it was

alleged that appellant gained access to the tavern. The other photograph is a close-up view of the area shown in the first photograph.

The objection to the admission of the first photograph was that it was not properly identified as representing conditions as they existed at the time of the asserted burglary. The objection to the second photograph was that it showed two sets of jimmy marks around the window, one of which was admittedly made on some prior occasion, and that the witness who identified the photograph could not differentiate between the recent and the old jimmy marks.

 Whether a photograph is sufficiently identified as a proper representation is a preliminary question to be determined by the trial court, and the determination of that question lies largely within its discretion. Its ruling thereon will not be disturbed except for abuse of discretion. *Quayle v. Knox*, 175 Wash. 182, 27 P. (2d) 115; *Keseleff v. Sunset Highway Motor Freight Co.*, 187 Wash. 642, 60 P. (2d) 720; *Kellerher v. Porter*, 29 Wn. (2d) 650, 189 P. (2d) 223. We have examined the record and find no abuse of discretion in this regard.

The judgment is affirmed.

SCHWELLENBACH, C. J., HILL, FINLEY, and OLSON, JJ., concur.