People of the State of Illinois, Plaintiff-Appellee, v.
Robert F. Milligan, Defendant-Appellant.

Gen. No. 10,872.

Fourth District.

March 6, 1969.

J. Waldo Ackerman, of Springfield, for appellant.

Raymond L. Terrell, State's Attorney of Sangamon County, of Springfield, for appellee.

CRAVEN, J., delivered the opinion of the court.

Robert F. Milligan was indicted for the crime of burglary. He was tried by jury, found guilty, and sentenced to two to eight years in the penitentiary.

Defendant-appellant assigns as error (1) the permitting of property to be admitted in evidence where the State failed to respond to a discovery motion and represented there was no such property; (2) admission into evidence of a statement of defendant allegedly made without defendant's being admonished of his constitutional rights prior to making such statement; and (3) an instruction alleged to be erroneous. Defendant-appellant contends his sentence should be reduced under Supreme Court Rule 615 (Ill Rev Stats 1967, c 110A, § 615).

Prior to trial, the public defender appointed to represent the indigent defendant filed a pretrial motion to require the State to furnish any oral or written confessions or admissions of defendant with the names and addresses of any witness to the same, an inventory of all instruments, articles and things seized by the State from the defendant, and a list of the names and addresses of all witnesses the State intended to call at the trial.

On the first day of the trial counsel for defendant called the court's attention to the fact that no response had been made to this motion. The State's Attorney informed the court that he had provided defendant with a list of witnesses who might be called to testify but that he knew of no admissions or confessions, oral or written, and of no articles seized from defendant that would be used in evidence, although the State intended to use a fingerprint of which defense had knowledge.

On the second morning of trial, after selection of the jury, the State's Attorney informed the court he had some clothing—a shirt, a pair of trousers, a pair of shoes

and a belt of the defendant worn on the date defendant was arrested. He stated that this clothing had been turned over by defendant to the Sangamon County Sheriff in return for jail clothing as is the practice. Outside the presence of the jury and prior to the presentation of evidence, defendant's counsel objected to the introduction of this clothing into evidence.

At the trial the State introduced into evidence the checkered shirt and bluejeans of the defendant worn at the time of his arrest and turned over at the jail. Defendant-appellant contends that the admission of this evidence is reversible error, first, on the ground that the State did not list these items in response to the discovery motion, and second, on the ground that the seizure of this clothing without a search warrant denied him equal protection of the law.

■■ There is nothing in the record in this case that leads us to conclude that defendant's clothing in issue was "seized" within the meaning of the motion to inventory "all . . . things . . . seized . . . from the Defendant." In the orderly management of the jail and the organized caretaking of those confined, it was the practice that clothing of inmates was exchanged for jail clothing and the personal clothing was then held by the sheriff's deputies. The receipt and retention of the clothing here involved appears to have been in accord with the routine management of the jail. The routine of the jail incidental to the organized caretaking of all prisoners was not a denial of equal protection of the law.

■ The receipt and holding of possession of the clothing was not an illegal search as the clothes were at all times within plain view. Thus, it was held in People v. Brown, 89 Ill App2d 231, 231 NE2d 262 (2nd Dist 1967), that the removal of the shoes of an accused at a police station an hour or more after his arrest did not constitute an illegal search. In People v. Elmore, 28 Ill2d 263, 192 NE2d 219 (1963), the court stated at 265 (192 NE2d at

220) : " 'A search implies a prying into hidden places for that which is concealed and it is not a search to observe that which is open to view.' (citing cases)" and held that the removal from defendant's car of an allegedly stolen razor which was on the ledge behind the back seat and visible through the windows was not an unreasonable seizure and did not involve a search.

■ We cannot fail to observe that the defendant knew that these articles of clothing were held by the authorities. We had occasion to consider a similar matter in People v. Tribbett, 90 Ill App2d 296, 232 NE2d 523 (4th Dist 1967), affd, 41 Ill2d 267, 242 NE2d 249 (1968), where defendant's motion for pretrial inspection of physical evidence prior to trial was denied as to a gun found in defendant's auto. There we held that tangible objects which the prosecution intends to offer should be subject to inspection, if requested, unless overriding considerations are present. However, foreknowledge by defendant of an object of which he is entirely cognizant and of its intended use would be of little assistance to him in preparing for trial. No conceivable surprise to the defendant or hampering of his preparation of his defense could have occurred by the failure of the State to list his clothing as things in possession of the State. Considering these factors, along with the fact that these were not articles "seized," the failure of the State to list these articles in response to the pretrial motion was, at most, harmless error.

The second ground argued as reversible error is the admission into evidence of an oral statement of defendant related at the trial in the testimony of Sergeant Nunes Curle. This witness, a Lake Springfield Patrolman, answered the call of Roy Blanford, the owner of a recently purchased home in the Lake Springfield area. Blanford had not yet moved into his home, but upon checking it found certain rooms in disorder and disturbed. Blanford's wife observed a man leaving the vicin-

62

ity and informed Blanford. Blanford gave chase to the fleeing man, but upon losing him called police. The sergeant testified that he saw a man on a creek bed near the Lake Springfield dam, about one-half mile west of the Blanford home, who fit the description of the fleeing man as given by Blanford. The sergeant stated that he asked this man "what he was doing in that vicinity and he said he was just fooling around down there, said he liked to be around the dam and creek there. I asked him how long he had been there and he said since eleven o'clock in the morning and it was at that time eight-fifteen. So, I asked him if he had been up around the house up there and he said no. So, I said, 'Well, we will go up there and see if the man can identify you.' So, I put him in the car and took him up there."

■ Defendant objects that at the time the sergeant questioned him concerning his actions and defendant answered, defendant was in police custody, that he was not apprised of his rights and that the answers he gave were not admissible under the doctrine of Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed2d 694, 10 ALR3d 974 (1966). The testimony of Sergeant Curle was that defendant had not been placed under arrest at the time of this conversation. Sergeant Curle had testified that he saw a man answering the description given him, got out of his car, stopped the man and inquired what he was doing. There is nothing in the testimony which indicated that defendant was in custody at the time of the remark of which he now complains. The sergeant stated defendant was not under arrest and thereafter got in the car of the sergeant and went with him to the home of Mr. and Mrs. Blanford. The Miranda decision, which was announced some two or three weeks prior to defendant's arrest on July 15, 1966, prohibits the use of statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless procedural safeguards are used securing the privilege

against self-incrimination. "Custodial interrogation," as defined in Miranda, is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." In the state of the record here, the defendant was not in custody or deprived of his freedom of action when he made the statement here related. The fact that he had not been advised of his constitutional right to remain silent did not render this statement inadmissible under the doctrine of Miranda.

The State's Attorney has stated that he knew of no admissions or confessions prior to trial and that only after the trial had commenced and the State was questioning Sergeant Curle did he know of the remarks of defendant which are in question. There is nothing in the record contradictory to this representation of the State's Attorney. On the basis of such representation the testimony was not rendered inadmissible because of the pretrial discovery motion and the State's oral answer in court that there were no oral or written confessions or admissions of defendant. Remarks made by defendant of an exculpatory nature, upon discovery during trial, are not rendered inadmissible because not disclosed in answer to a pretrial discovery motion.

The statement complained of could not have caused the jury to return a verdict contrary to all the other evidence. A review of the record reveals that there is sufficient evidence for the jury to have found defendant guilty beyond a reasonable doubt. Any error resulting from the recital of defendant's remarks does not constitute reversible error.

The instruction complained of by defendant instructed the jury that intent and knowledge are material elements of the crime of burglary and must be proved beyond a reasonable doubt. It further instructed that

if the jury find beyond a reasonable doubt that the defendant committed the crime and that he acted with knowledge or intent, the knowledge or intent required to make the case was proved. It was similar to the instructions given and approved in People v. Pavluk, 386 Ill 492, 54 NE2d 567 (1944). We find no reversible error in the giving of this instruction.

██ Finally, we find no proper ground presented for the reduction of defendant-appellant's sentence. Defendant-appellant contends that the State offered to recommend a sentence of lesser extent than that pronounced by the court. No showing is made as to where, when, to whom or by whom such offer was made. In view of the evidence heard and considered by the trial court at the hearing in aggravation and mitigation, we find no ground for reduction of sentence in this court.

Finding no reversible error, the judgment is affirmed.

Judgment affirmed.

TRAPP, P. J. and SMITH, J., concur.